**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00082-HBB**

**SHANNELL BLAKE**                                                      **PLAINTIFF**

**V.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

 Before the Court is the complaint (DN 1) of Shannell Blake ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 17) and Defendant (DN 21) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

 Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15).   By Order entered May 25, 2021 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

---

1   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on June 23, 2017 (Tr. 12, 197-200, 204-08).   Plaintiff alleges to have become disabled on June 1, 2017, as a result of multiple sclerosis and fibromyalgia (Tr. 12, 56, 64, 74, 83). These claims were initially denied on August 11, 2017,[2] and the claims were again denied upon reconsideration on October 25, 2017 (Tr. 12, 63, 71, 72-73, 81-82, 90-91, 92-93).   Thereafter, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 12, 120-25).

Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee on January 25, 2019 (Tr. 12, 27-29).   Virtually present at the hearing from Madisonville, Kentucky was Plaintiff and her attorney Sara Martin Diaz[3] (Id.).   During the hearing, James B. Adams testified as a vocational expert (Id.).

On June 21, 2019, the ALJ rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 12-21).   At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 30, 2018, the alleged onset date (Tr. 14).   At the second step, the ALJ determined Plaintiff has the following severe impairments: multiple sclerosis, migraine, disorders of muscle ligament and fascia, obesity, major depressive disorder, and generalized anxiety disorder (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 15).

2   The ALJ's opinion listed the date of the initial denials as August 23, 2017 (Tr. 12).   The Disability Determination and Transmittal documents, as well as the date accompanying the signature of the Disability Adjudicator/Examiner, list the date as August 11, 2017 (Tr. 63, 71, 72-73).   Thus, the Court will use August 11.

3   The ALJ remarked that Christopher Rhoads, an attorney, was designated as Plaintiff's representative (Tr. 12). However, Sara Martin Diaz, an attorney with the same firm, appeared at the hearing (Tr. 12, 27-29).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except for the following limitations: Plaintiff can occasionally push/pull with the lower extremities and occasionally push/pull with the upper extremities; can occasionally climb ramps/stairs but never climb ladders/ropes/scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can frequently handle, finger, reach overhead and all around using the upper extremities; cannot be exposed to vibration, moving machinery parts, or unprotected heights; can understand, remember and carry out simple detailed tasks, and maintain concentration, persistence and pace for 2 hours in an 8-hours workday; can engage in frequent interaction with co-workers, supervisors and the public; and cannot engage in fast-paced production (Tr. 16-17).   The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 19).

After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 20). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since September 23, 2017, the date the application was filed, through the date of the decision, January 24, 2020 (Tr. 21).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 196).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

3

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

Challenge to Step Three: Listing 11.09

1.  Arguments of the Parties

Plaintiff asserts that the ALJ erred by not finding that she "met" the requirements of Listing 11.09, *Multiple Sclerosis* (DN 17-1 PageID 1868-71).   Plaintiff criticizes the ALJ who "acted as her own medical expert in this case and made a medical determination without substantial evidence" (Id. at PageID 1869).   This criticism stems from the Plaintiff's treating physician, Dr. Warren, declining to complete a Medical Source Statement and the ALJ not seeking a Consultative Examination before or after the administrative hearing (Id. at PageID 1868-69).   As for the requirements of Listing 11.09, Plaintiff concedes that "[h]er condition has not progressed to the point that she meets the criteria laid out in 11.09A; however, she does satisfy the 11.09B requirements" (Id. at PageID 1870).   Plaintiff relies upon her testimony to discuss how she has a marked limitation in physical functioning due to her impairment and its associated treatment (Id. at PageID 1870-71).   Plaintiff also states that the ALJ should have found that she had a marked limitation in concentrating, persisting, or maintaining pace, as well as in adapting or managing yourself (Id. at PageID 1871).   Plaintiff contends that if the ALJ had appropriately considered the medical evidence, it would support a finding that Plaintiff met Listing 11.09 (Id.).

Defendant posits that the evidence Plaintiff references for why she has a marked limitation in physical functioning does not "meet[] the high burden to prove the 'persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work related activities . . .' required to show a marked limitation . . ." (DN 21 PageID 1890-91).   Even if Plaintiff shows a marked limitation in physical functioning, Defendant contends that Plaintiff does not meet her burden of showing that she has a marked limitation in one of the four criteria of

6

Listing 11.09B (Id. at PageID 1891).   "Further, no medical source indicated that Plaintiff had marked limitation in any area of functioning or met or medically equaled any listing" (Id. at PageID 1892).

    2.   Discussion

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 404.1520(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled.   See 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Hum. Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).   However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing.   20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. Appx. at 491.   Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."   Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011).   Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's

impairment is the medical equivalent of a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p; <u>Deters v. Sec'y of Health, Educ. & Welfare</u>, 789 F.2d 1181, 1186 (5th Cir. 1986).

As the parties have noted, the requirements of Listing 11.09 are as follows:

> 11.09   *Multiple Sclerosis*, characterized by A or B:
>
> A.   Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B.   Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>   1.   Understanding, remembering, or applying information (see 11.00G3b(i)); or
>   2.   Interacting with others (see 11.00G3b(ii)); or
>   3.   Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>   4.   Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.09.

Plaintiff concedes that "[h]er condition has not progressed to the point that she meets the criteria laid out in 11.09A" (DN 17-1 PageID 1870).   Thus, the focus of this challenge will pertain to 11.09B.

Appendix 1 lists the following examples to define "physical functioning":

> Examples of this criterion include specific motor abilities, such as independently initiating, sustaining, and completing the following activities: standing up from a seated position, balancing while standing or walking, or using both your upper extremities for fine and gross movements (see 11.00D).   Physical functioning may also include functions of the body that support motor abilities, such as the abilities to see, breathe, and swallow (see 11.00E and 11.00F). Examples of when your limitation in seeing, breathing, or

swallowing may, on its own, rise to a "marked" limitation include: prolonged and uncorrectable double vision causing difficulty with balance; prolonged difficulty breathing requiring the use of a prescribed assistive breathing device, such as a portable continuous positive airway pressure machine; or repeated instances, occurring at least weekly, of aspiration without causing aspiration pneumonia. Alternatively, you may have a combination of limitations due to your neurological disorder that together rise to a "marked" limitation in physical functioning.   We may also find that you have a "marked" limitation in this area if, for example, your symptoms, such as pain or fatigue (see 11.00T), as documented in your medical record, and caused by your neurological disorder or its treatment, seriously limit your ability to independently initiate, sustain, and complete these work-related motor functions, or the other physical functions or physiological processes that support those motor functions.   We may also find you seriously limited in an area if, while you retain some ability to perform the function, you are unable to do so consistently and on a sustained basis.   The limitation in your physical functioning must last or be expected to last at least 12 months.   These examples illustrate the nature of physical functioning.   We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00G3a.   One subsection earlier in the regulations also explains what classifies as a "marked limitation" in physical functioning:

For this criterion, a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities (see 11.00G3).   You may have a marked limitation in your physical functioning when your neurological disease process causes persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower extremity. The persistent and intermittent symptoms must result in a serious

limitation in your ability to do a task or activity on a sustained basis. We do not define "marked" by a specific number of different physical activities or tasks that demonstrate your ability, but by the overall effects of your neurological symptoms on your ability to perform such physical activities on a consistent and sustained basis. You need not be totally precluded from performing a function or activity to have a marked limitation, as long as the degree of limitation seriously limits your ability to independently initiate, sustain, and complete work-related physical activities.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00G2a.

In the present matter, the ALJ expressly considered Listing 11.09 and found that Plaintiff's multiple sclerosis did not meet or medically equal the requirements "as it has not risen to the level of severity set forth in the listing criteria" (Tr. 15). "[T]here is no evidence of an extreme limitation in [Plaintiff]'s ability to stand up from a seated position, balance while standing or using the upper extremities. [Plaintiff] does not have any marked limitations in one of the paragraph 'B' criteria" (Id.). When looking to Listings 12.04 and 12.06, the ALJ also considered the four paragraph "B" criteria, which corresponds with 11.09B. Specifically, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information, as well as in concentrating, persisting, or maintaining pace (Tr. 16). Additionally, the ALJ found moderate limitation in Plaintiff's ability to interact with others and in adapting or managing oneself (Id.).

Plaintiff's argument for meeting the physical functioning limitation centers upon the combination of limitations that arise from Plaintiff's monthly infusions, her flare-ups, migraines, and fatigue (DN 17-1 PageID 1871) (citing Tr. 40-46). This argument solely cites Plaintiff's testimony at the administrative hearing (Id.). However, the ALJ considered all of these complaints, including explicitly mentioning the flare-ups and use of a walker and cane (Tr. 15).

10

Moreover, the ALJ also considered Plaintiff's other complaints during the step two and RFC analyses (Tr. 14-19).   Ultimately, Plaintiff's contentions do not show that these complaints "seriously limit [her] ability to independently initiate, sustain, and complete these work-related motor functions, or the other physical functions or physiological processes that support those motor functions."   20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00G3a.

When considering the paragraph "B" criteria, Plaintiff asserts that she should have a marked limitation in concentrating, persisting, or maintaining pace, as well as in adapting or managing oneself (DN 17-1 PageID 1871).   To support this claim, she cited three documents which noted a depressed mood, excessive worry, extreme fatigue, and malaise (Id.) (citing Tr. 1318, 1320, 1327).   In the paragraph "B" analysis of step three, the ALJ, when discussing adapting or managing oneself, noted that Plaintiff "has experienced exacerbation of her depression and anxiety due to multiple sclerosis" (Tr. 16).   During the RFC analysis, the ALJ noted that Plaintiff was prescribed Amantadine for fatigue (Tr. 18).   The ALJ also noted Plaintiff's reports, specifically on August 10, 2018, of depression, anxiety, emptiness, crying, and stress (Id.).   Later in the analysis, the ALJ recounted that Plaintiff testified that her medications were helping to manage her anxiety and depression (Tr. 19).   These considerations were the same that Plaintiff asserts the ALJ failed to properly consider.

Considering the ALJ's determination as a whole, it is clear that the ALJ relied upon the medical evidence in the record and Plaintiff's personal accounts when determining the paragraph "B" criteria.   See Bradford v. Sec'y of Health & Hum. Servs., 803 F.2d 871, 873 (6th Cir. 1986) (ALJ's decision should be read as a whole); Walker v. Sec'y of Health & Hum. Servs., 884 F.2d 241, 245 (6th Cir. 1989).   Indeed, the ALJ recited and considered information nearly identical to

that cited by Plaintiff.   Plaintiff's argument, then, amounts to a request for this Court to re-evaluate the evidence and craft new findings to the paragraph "B" criteria.   However, that is not this Court's role.   Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *See* Siterlet v. Sec'y of Health & Hum. Servs., 823 F.2d 918, 920 (6th Cir. 1987).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993) (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   The ALJ's determination of the paragraph "B" criteria is supported by substantial evidence, even if Plaintiff could view the evidence in a different light. As such, the Court is obliged to affirm the ALJ's finding.

Looking to medical equivalency, the Court previously noted that administrative law judges look to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether a claimant's impairment is the medical equivalent of a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p; Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).   However, Plaintiff has not cited, nor has the Court found, any opinions that would lend guidance towards medical equivalence.   While the ALJ found the opinions of the State agency medical consultants to be unpersuasive (Tr. 19), it is still worth noting that, during the initial and reconsideration reviews, the consultants did not remark that Plaintiff met or medically equaled any listing (Tr. 59-60, 67-68, 78-79, 87-88).

Plaintiff asserts that the ALJ acted as her own medical expert in this case (DN 17-1 PageID 1869).   However, there is a difference between an administrative law judge having the authority to make a step three determination based upon the medical evidence and an

administrative law judge "substitut[ing] his own medical judgment for that of a treating physician" to make independent medical findings. *See* Rhodes v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 193031, at *25 (W.D. Ky. Mar. 7, 2019) (quoting Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009)). Indeed, "ALJs must not succumb to the temptation to play doctor[.]" Id. (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Looking to the medical evidence and the ALJ's opinion, it is clear that the ALJ in the present matter did not succumb to this temptation. As discussed above, the ALJ discussed the relevant medical evidence and reports throughout the analysis and crafted an opinion with a step three analysis that is supported by substantial evidence. *See* Bradford v. Sec'y of Health & Hum. Servs., 803 F.2d 871, 873 (6th Cir. 1986) (ALJ's decision should be read as a whole). Therefore, Plaintiff's arguments are unavailing, as the ALJ's step three determination is supported by substantial evidence and comports with applicable law.

Challenge to RFC Determination

1. Arguments of the Parties

Plaintiff contends that "[t]he ALJ failed to recognize the limiting effects of [Plaintiff]'s severe impairments as supported by objective evidence[,]" and "[b]ased on the objective evidence and the testimony presented at [the administrative] hearing, she should have been limited to less than sedentary work" (DN 17-1 PageID 1862). Included in this analysis, Plaintiff contends that the ALJ "erroneously concluded that [Plaintiff]'s statements concerning the 'intensity, persistence and limiting effects' of her symptoms were not consistent with medical evidence and other evidence" (Id. at PageID 1864). Next, Plaintiff contends that the ALJ erroneously did not include a limitation that Plaintiff be required to use a walker or cane on the job (Id. at PageID 1865).

Additionally, Plaintiff argues that she should have received a more restrictive limitation in her ability to handle, finger, reach overhead and all around using the upper extremities (Id.).   Finally, Plaintiff posits that her impairments and treatments would require an absenteeism limitation, as she would need to take unscheduled and unpredictable breaks throughout the day, in addition going to therapy and her infusion (Id. at PageID 1866-68).

Defendant disputes Plaintiff's argument by maintaining that "[t]he ALJ reasonably considered the medical evidence and medical opinions in the record and determined that Plaintiff could perform an extremely reduced range of sedentary work with postural, environmental, manipulative, and nonexertional limitations" (DN 21 PageID 1893).   "Plaintiff points to a handful of treatment notes to support her allegations that she was limited beyond the ALJ's RFC finding, but does not point to any evidence the ALJ did not consider or allege that the ALJ mischaracterize any evidence" (Id. at PageID 1894).   Moreover, "[n]o medical source opined that Plaintiff had limitations beyond those assessed by the ALJ" (Id. at PageID 1895).   Defendant notes that the ALJ sent a Medical Source Statement form to Plaintiff's treating neurologist, Dr. Roderick Warren, but Dr. Warren declined to complete the form (Id. at PageID 1895, n.4).   Defendant characterizes the ALJ's decision not to order a consultative exam or recontact Dr. Warren as a discretionary choice on how to develop the record (Id.).   As for the manipulative limitations, Defendant reiterates that "no medical source opined that Plaintiff had any manipulative restrictions at all" (Id. at PageID 1896).   Thus, "[t]he ALJ gave Plaintiff the benefit of the doubt in assessing any limitation[s] at all in this functional area" (Id.).   Next, Defendant casts aside Plaintiff's argument about the need for a walker or cane, as there is no longitudinal evidence in the record that demonstrates the continued necessity, and "the vocational expert testified that the number of

14

jobs available would not be affected by Plaintiff's use of a cane or walker" (Id.) (citing Tr. 53, 1084, 1086, 1540).   Finally, when reviewing the absenteeism argument, Defendant contends that the ALJ considered Plaintiff's testimony to the length of time of her infusions and migraines, but "there is no evidence in the record to support that this was a problem that would cause an unreasonable number of absences from work" (Id. at PageID 1897).

2.   Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

Additionally, in assessing a claimant's RFC, an administrative law judge must necessarily consider the subjective allegations of the claimant and make findings.   20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.   A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.   20 C.F.R. §§ 404.1529(a), 416.929(a).   In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986),

15

applies.   First, the administrative law judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the administrative law judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A claimant's level of daily activity is a factor which the administrative law judge may consider in determining the extent to which pain is of disabling severity.   20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Hum. Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.).   Additionally, the frequency that a claimant has sought treatment for the allegedly disabling impairments is a factor that may be considered in assessing her subjective complaints.   20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v).   Finally, the medication used to alleviate the alleged pain or other symptoms can also be considered as a factor.   20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).   Mild medication and infrequency of dosages taken by the claimant do not bear out claims of debilitating pain.   *See* Maher v. Sec'y of Health & Hum. Servs., 898 F.2d 1106, 1109 (6th Cir. 1989).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent she testified (Tr. 17).   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility.   Since tolerance of pain and/or other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe Plaintiff's demeanor, "should not be discharged lightly."   Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).   For the reasons discussed when reviewing Plaintiff's individual claims of error, the Court finds that the ALJ's findings about Plaintiff's pain and other symptoms is supported by substantial evidence and does not require discharging the ALJ's findings.

Beginning with Plaintiff's arguments about the more restrictive handling and fingering limitations, Plaintiff simply states there is "ample evidence that demonstrates she had numbness and limited ability to grasp/finger objects" and then quotes her testimony from the administrative hearing (DN 17-1 PageID 1866).   Plaintiff also appears to later argue that the inclusion of the a "frequently" limitation to handling and fingering was intentionally included in the RFC as to avoid the elimination of all work which would occur if this limitation was reduced to "occasional" (Id. at PageID 1868) (citing Tr. 54).   However, these citations are not persuasive.   During the RFC analysis, the ALJ noted that Plaintiff reported complaints of fatigue, back pain, generalized weakness in the extremities, and tingling and intermittent numbness in her legs, but Plaintiff was still working full-time (Tr. 18).   Additionally, the ALJ mentioned that this neuropathic pain "was likely due to multiple sclerosis, [but] it was stable and controlled with Lyrica" (Id.) (citing Tr. 577).

The ALJ also discussed documentation of Plaintiff's flare-ups and the responses from Plaintiff's treatment regimen and how the medication changed based on the results (Id.).   Moreover, Plaintiff, again, returned to work (Id.) (citing Tr. 1699).   Thus, the ALJ considered Plaintiff's complaints and impairments and crafted an RFC that is supported by substantial evidence.

As for Plaintiff's argument about the inclusion of a walker/cane limitation, Plaintiff relies upon her testimony at the administrative hearing and two documents which noted the use of a walker (DN 17-1 PageID 1865) (citing Tr. 39-40, 279, 1088).   The first document is a signed letter by Plaintiff's supervisor at the Madisonville AT&T store, who remarked that Plaintiff used a walker during work, after the last time she returned from a leave of absence, which was "not the ideal situation considering that she has to walk throughout the store during the day to be able to effectively do her job and this is clearly a struggle for her" (Tr. 279).   The second document is a record from Deaconess Clinic on November 6, 2018, where Dr. Warren remarked that Plaintiff's gait was very slow and Plaintiff utilized a rolling walker (Tr. 1088).   The ALJ, however, explicitly references the letter from Plaintiff's supervisor during the RFC analysis (Tr. 17-18).   The ALJ also cited to another document noting Plaintiff's use of a cane while walking (Tr. 18) (citing Tr. 1540).   Moreover, the ALJ referenced documentation contained in the same exhibit as Plaintiff referenced document (Id.).   Thus, while Plaintiff seeks to have an additional limitation imposed to include use of a walker or cane, this argument amounts to a request for this Court to re-evaluate the evidence and craft a new RFC.   This Court, however, is obliged to affirm an ALJ's decision where substantial evidence supports it, even if evidence could support a decision to the contrary. *See* Siterlet v. Sec'y of Health & Hum. Servs., 823 F.2d 918, 920 (6th Cir. 1987); Cotton v.

Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).   As detailed above, substantial evidence supports the ALJ's determination to not include a limitation about the use of a walker or cane.

Moreover, the Court is persuaded by the vocational expert's testimony when discussing the use of a walker for ambulation and balance (Tr. 53).   During the ALJ's questioning, the vocational expert was asked whether the number of jobs would still be available as a result of the inclusion of a walker, to which the vocational expert replied that all the jobs were completed in a seated position, which would ameliorate any potential job losses from the inclusion of a walker (Id.). Additionally, the vocational expert did note that "some employers might not want them to even use the walker to get to work, but that probably wouldn't be a major factor because the actual work is performed in a seated position" (Id.).   While there is substantial evidence to support the ALJ's determination about not including a walker/cane limitation in the RFC, any potential quarrels are mitigated, as explained in the vocational expert's testimony.

Turning to Plaintiff's request for an absenteeism limitation, Plaintiff avers that her therapy takes 3 hours and, in the days preceding her infusion treatments, she "does not want to get out of bed" (DN 17-1 PageID 1866) (citing Tr. 43).   Additionally, Plaintiff claims her migraines occur about once per week and can last up to 24 hours (Id. at PageID 1866) (citing Tr. 383).   The ALJ considered Plaintiff's complaints, and the medical evidence associated with those complaints, to determine that Plaintiff's migraines were a severe impairment (Tr. 14).   At step two, the ALJ reiterated that Plaintiff was "having increased occurrences of migraine headaches, as well as increased weakness and tingling in the extremities" (Tr. 15).   In the RFC analysis, the ALJ recounted that Plaintiff reported complaints of fatigue, back pain, generalized weakness in the extremities, and tingling and intermittent numbness in her legs, but Plaintiff was still working

full-time (Tr. 18).   As Defendant noted, Plaintiff had a migraine in February of 2018, which was resolved with an injection, and a month later, Plaintiff reported that her headaches were controlled with medication (Tr. 565, 575).   Finally, Plaintiff's reference to her visit to the emergency department occurred June of 2018, where Plaintiff was ultimately discharged after improvement resulted from medication (Tr. 1039-40).   As the Court has noted above, this Court is obliged to affirm an ALJ's decision where substantial evidence supports it, even if evidence could support a decision to the contrary, and, here, substantial evidence supports the ALJ's determination to not include an absenteeism limitation.

Finally, Plaintiff contends that she requires the ability to take unscheduled and unpredictable breaks throughout the day and the ALJ erred by failing to include this limitation (DN 17-1 PageID 1868).   However, Plaintiff does not cite to any documentation that the ALJ did not allegedly discuss, nor did she discuss any medical documentation that could reasonably support this conclusion (Id.).   It is well established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   Therefore, Plaintiff's argument about unscheduled and unpredictable breaks is waived.

Therefore, for the reasons above, the ALJ's RFC determination is supported by substantial evidence and comports with applicable law.   Additionally, for the same reasons, he ALJ's determinations as to the intensity, persistence, and limiting effects of Plaintiff's impairments is

20

supported by substantial evidence and comports with applicable law.   As such, Plaintiff is awarded no relief under this challenge.

Challenge to Step Five: Sufficient Number of Jobs

1.   Arguments of the Parties

Plaintiff's final argument takes issue with whether there is a sufficient number of jobs available for Plaintiff to perform in the national economy (DN 17-1 PageID 1872-74).   Plaintiff avers that the Dictionary of Occupational Titles, and the jobs identified by the vocational expert, has not been updated in at least twenty years (Id. at PageID 1873).   As such, Plaintiff contends that these job descriptions are obsolete (Id.).   Moreover, Plaintiff argues that the vocational expert "should have supplemented his testimony with a more up to date and reliable source, like O-Net" (Id.).   Even then, Plaintiff briefly remarks that "[o]n its face, the[ identified] jobs clearly involve fast-paced production which goes against the ALJ's own RFC" (Id.).   Additionally, the vocational expert briefly acknowledged the potential elimination of some jobs should use of a walker for ambulation and balance be required (Id.).   Finally, Plaintiff argues that the "combined number of available jobs in the national economy is not sufficient" (Id.).   "Given the extremely low number of jobs available in the economy and the fact that these jobs all involve fast-paced production and there is no information regarding the use of a walker or other assistive ambulation device, the vocational expert testimony is not reliable" (Id. at PageID 1874).

Defendant responds to Plaintiff's claim by contending that "the ALJ properly relied on vocational expert . . . testimony to find that Plaintiff was capable of a significant number of jobs in the national economy" (DN 21 PageID 1898) (citing Tr. 51-54).   The vocational expert's testimony "was consistent with the DOT," and Plaintiff's attorney "did not question the [vocational

expert' regarding whether the DOT was obsolete or about the O*NET (Occupational Information Network) during the hearing" (Id.) (citing Tr. 54).   Defendant avers that the DOT is the "systematically favor[ed]" source for job information, compared to O*NET (Id.).   Moreover, "[T]he Sixth Circuit emphasized that the DOT continues to serve as an appropriate and reliable source of vocational information" (Id. at PageID 1900) (citing O'Neal v. Comm'r of Soc. Sec., 799 F. App'x 313, 318 (6th Cir. 2020)).   "Neither the regulations nor case law require the ALJ to compare [vocational expert] testimony to other vocational sources of information, such as O*NET" (Id.).   As for Plaintiff's arguments about the number of jobs, Defendant asserts that the vocational expert "named three representative jobs and indicated that there were a total of 189,000 of these jobs in the national economy" (Id. at PageID 1903) (citing Tr. 52-53).   Thus, there is a significant number.

2.  Discussion

The burden of proof does not shift to the Commissioner to establish plaintiff's ability to work until the fifth step of the evaluation.   Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).   At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional, and national economies that the claimant can perform, given her residual functional capacity.   See Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his/her limitations.   See Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Hum. Servs., 915 F.2d 186, 189

(6th Cir. 1990); <u>Varley v. Sec'y of Health & Hum. Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987).   In making a determination at step five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience, and RFC.   20 C.F.R. §§ 404.1520(f), 416.920(f).

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, <u>Bradford v. Sec'y, Dep't. of Health & Hum. Servs.</u>, 803 F.2d 871, 874 (6th Cir. 1986) (*per curiam*), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments.   <u>Varley</u>, 820 F.2d at 779.   If the ALJ comes forward with evidence of job availability, the claimant must rebut that she can perform the identified job.   <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*).   The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.   <u>Hardaway v. Sec'y of Health & Hum. Servs.</u>, 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*).   Moreover, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the claimant's unsubstantiated complaints.   <u>Id.</u>

Finally, the Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted."   <u>Cunningham v. Astrue</u>, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).   Several district courts in the Sixth Circuit followed <u>Cunningham</u> and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence

supported the ALJ's determination at the fifth step.     *See e.g.* <u>Wright v. Berryhill</u>, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); <u>Westmoreland v. Berryhill</u>, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); <u>Rollston v. Comm'r of Soc. Sec.</u>, No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016).    Other district courts within the Sixth Circuit criticized <u>Cunningham's</u> reasoning and declined to follow its holding.     *See e.g.* <u>Kidd v. Berryhill</u>, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); <u>Montano v. Comm'r of Soc. Sec.</u>, No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); <u>Belew v. Astrue</u>, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts.    <u>O'Neal v. Comm'r of Soc. Sec.</u>, 799 F. App'x 313, 316-18 (6th Cir. 2020).    Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy.    <u>Id.</u>

In the present case, the ALJ considered Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony to list three jobs which Plaintiff could perform in the national economy (Tr. 20-21).    These jobs include: puller turner (DOT # 782.687-030), with 52,000 jobs in the national economy; blower stuffer (DOT # 731.685-014), with 88,000 jobs in the national economy; and lens inserter (DOT # 713.687-026), with 49,000 jobs in the national economy (Tr. 21).    Thereafter, the ALJ opined that, pursuant to SSR 00-4p, she found the vocational expert's testimony to be consistent with the information contained in the DOT (<u>Id.</u>).

Beginning with Plaintiff's obsolescence argument, Plaintiff had, and indeed took, the opportunity to cross-examine the vocational expert during the administrative expert (Tr. 54). During this examination, Plaintiff discussed whether the availability of jobs would remain if there were additional or changed limitations as to the hypothetical person's ability to handle and finger and absenteeism (Id.).   No discussion occurred regarding the DOT, O*NET, the vocational expert's reliance on the DOT over O*NET, or the alleged obsolescence of the jobs (Id.).   Thus, based upon the holding in O'Neal, Plaintiff has forfeited her obsolescence argument.

While Plaintiff cites three cases in which the undersigned remanded proceedings to the Commissioner for further proceedings (DN 17-1 PageID 1874), all three of those cases pre-date O'Neal.   As the Sixth Circuit has provided more clarity on the applicable law following Cunningham, Plaintiff's use of the undersigned's cases is unpersuasive.

Plaintiff's other argument, whether there are a significant number of jobs in the national economy, is equally unpersuasive.   Plaintiff contends that the estimate job totals (52,000 for puller turner; 88,000 for blower stuffer; and 49,000 for lens inserter) are not sufficient (DN 17-1 PageID 1873).   Precedent, however, details that the numbers indicated for the three jobs are more than sufficient.   *See e.g.*, McCormick v. Sec'y of Health & Hum. Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine county area of Dayton, Ohio); *accord* Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally).   It is for the Commissioner to evaluate the

reliability of the vocational expert's testimony and to determine what constitutes a significant number.   *See* Hall, 837 F.2d at 275.

The ALJ considered this information and found the 189,000 jobs in the national economy to be a significant number (Tr. 20-21).   As the Sixth Circuit previous discussed:

> [A]n ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs "should consider many criteria in determining whether work exists in significant numbers."   *Hall v. Bowen*, 837 F.2d at 275.   It is why we have said "we cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number."   *Id.*   And it is why substantial evidence review applies. *See id.*; *see also* 42 U.S.C. § 405(g).   Under that standard, the ALJ did not commit a reversible error.   For substantial evidence supports the conclusion that Taskila could perform at least two jobs that are meaningfully available locally (200 jobs) and nationally (6000).

Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 906 (6th Cir. 2016).   Therefore, the ALJ's determination about whether 189,000 jobs in the national economy is significant is supported by substantial evidence.

Finally, Plaintiff's argument includes two statements that potentially indicate another issue where Plaintiff's believes the ALJ erred.   First, "On its face, these jobs clearly involve fast-paced production which goes against the ALJ's own RFC" (DN 17-1 PageID 1873).   Second, "Given the extremely low number of jobs available in the economy and the fact that these jobs all involve fast-paced production . . ." (Id. at PageID 1874).   These statements posit that the jobs identified by the vocational expert, which were adopted by the ALJ, all contained fast-paced production, which is precluded by Plaintiff's RFC (*see* Tr. 17).   However, these brief comments, contained in Plaintiff's argument about the obsolescence and sufficiency of numbers, is the extent of Plaintiff's

26

argument to this end.   Plaintiff has cited no facts or law to support these claims, nor did she make any attempt to question the vocational expert about these jobs requiring fast-paced production.   It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   Thus, Plaintiff's argument about the identified jobs requiring fast-paced production is waived.

Therefore, for the reasons detailed above, the ALJ's step five analysis is supported by substantial evidence and comports with applicable law.

### Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

March 29, 2022

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:          Counsel of Record

28